**REISS GREENHOUSES, INC., Relator,**

v.

**COUNTY OF HENNEPIN, Respondent.**

**No. 50198.**

Supreme Court of Minnesota.

March 28, 1980.

---

Lindquist & Vennum and J. Michael Dady, Minneapolis, for relator.

Thomas L. Johnson, County Atty., and John M. Gendler, Asst. County Atty., Minneapolis, for respondent.

Heard before TODD, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

## OPINION

SCOTT, Justice:

This matter arises from a writ of certiorari to review the decision of the Minnesota Tax Court, which affirmed the Hennepin County Assessor's denial of appellant's application for tax valuation under the Minnesota Agricultural Property Tax Law, Minn. Stat. § 273.111 (1978) (the "green acres" statute). We reverse.

The land in question is located in Golden Valley, Minnesota, is 16 acres in size, and is legally described, in part, as Plat 85080, Parcel 6000. The record owner of the property is Reiss Greenhouses, Inc., which is engaged in the business of growing horticultural and nursery products for wholesale distribution. The shares of stock of Reiss Greenhouses, Inc., have been exclusively owned by five individuals from 1962 to the present: (1) Hans Reiss, currently the company president; (2) William Reiss, Hans' son; (3) Henry Reiss, Hans' nephew (the son of Hans' deceased brother); and (4, 5) Angeline Reiss and Bertha Reiss, Hans' sisters-in-law (the wives of Hans' deceased brothers).

Parcel 6000 was purchased in 1926 by John Reiss, Hans' father. In approximately 1930 John Reiss bought some contiguous land located between Parcel 6000 and what is now Highway 55 (legally described, in part, as Plat 84531, Parcels 1805 and 1825). These properties, including Parcel 6000, were then used for growing vegetables and produce, and greenhouses were subsequently constructed to facilitate such use. The family business was initially a proprietorship, but in 1930 it adopted its corporate form.

In approximately 1954 Bertha Reiss and her husband built a home on one of the parcels of property which is adjacent to Parcel 6000. Similarly, in 1956, Angeline Reiss and her husband built a house on the other parcel located contiguous to the subject real estate. Bertha and Angeline Reiss are the record owners of these properties and have occupied their respective homesteads up to the present time.

With respect to the agricultural use of Parcel 6000, Hans Reiss testified that (1) more than one-third of the total Reiss family income (and that of the individual family units involved) is derived from Parcel 6000; (2) the total production income from Parcel 6000 annually exceeds $300 plus $10 per tillable acre; and (3) Parcel 6000 is devoted to the production for sale of horticultural and nursery stock.

On April 28, 1978, the five shareholders of Reiss Greenhouses, Inc., applied to the Hennepin County Assessor for valuation and tax deferment of Parcel 6000 under the green acres statute. In a letter dated July 28, 1978, the Hennepin County Assessor denied the application by reasoning as follows:

> The property does not meet the ownership requirements [for green acres status]. Ownership is [sic] in the name of the corporation (i. e., "Reiss Greenhouses, Inc.") does not qualify unless it is a Family Farm Corporation. "Family Farm Corporation" for the purpose of Subd. 3, MN Statutes 273.111 means a corporation

founded for the purpose of farming and owning agricultural land, in which all of the stockholders are members of a family related to each other within the third degree of kindred according to the rules of civil law. Since cousins are related within the fourth degree of kindred and two of the stockholders in Reiss Greenhouses, Inc. are cousins, the property in question does not qualify under the ownership requirement.

On April 17, 1979, the Minnesota Tax Court affirmed the Hennepin County Assessor's decision. The case is now before this court by way of certiorari and the salient issue presented for our consideration is whether the subject property qualifies for green acres treatment under Minn.Stat. § 273.111, subd. 3 (1978).

Section 273.111 provides for special valuation and tax deferment for certain agricultural land. Subdivision 2 of the statute reveals the general policy underlying the enactment of the law:

> The present general system of ad valorem property taxation in the state of Minnesota does not provide an equitable basis for the taxation of certain agricultural real property and has resulted in inadequate taxes on some lands and excessive taxes on others. Therefore, it is hereby declared to be the public policy of this state that the public interest would best be served by equalizing tax burdens upon agricultural property within this state through appropriate taxing measures.

The purpose and intent of § 273.111 was further expanded upon by this court in *Elwell v. County of Hennepin,* 301 Minn. 63, 65, 221 N.W.2d 538, 541 (1974), as follows:

> The green acres statute provides that certain real estate devoted to agricultural use is entitled to be valued for real estate tax purposes on a basis which does not consider nonagricultural factors. With the exploding expansion and development in urban areas over the past few decades, there have been rapidly increasing land values in the periphery of metropolitan areas. Both the value of farmland locat-ed in those areas and real estate taxes based upon that value have increased accordingly. These higher property taxes, coupled with special assessments caused by sewer and water improvement projects for new development on the fringes of established urban areas which often must pass through intervening farmland, have become so great in many cases that the owner is no longer financially able to continue the agricultural use of the land. This, in turn, has led to forced sales and other hardships to the owners of such land. The legislature recognized this problem and, in 1967, passed the green acres legislation designed to provide property tax relief so that the land could economically be continued in use for agricultural purposes. The essence of the statute is that farmland, if it meets the requirements of the act, will be valued for tax purposes solely with reference to its agricultural use, which may not necessarily be the same value it would have if other potential uses for the land were considered by the assessor.

(Footnotes omitted.)

The statutory criteria which must be satisfied before land can qualify for green acres classification are set out in § 273.111, subd. 3:

> Real estate consisting of *ten acres or more* shall be entitled to valuation and tax deferment under this section only if it is *actively and exclusively devoted to agricultural use as defined in subdivision 6* and either (1) is the homestead or thereafter becomes the homestead of a surviving spouse, child, or sibling of the said owner or is real estate which is farmed with the real estate which contains the homestead property, or (2) *has been in possession of the applicant,* his spouse, parent, or sibling, or any combination thereof, *for a period of at least seven years prior to application* for benefits under the provisions of Laws 1969, Chapter 1039 [the green acres legislation], or (3) is the homestead of a shareholder in a family farm corporation, notwithstanding the fact that legal title to the real estate may

be held in the name of the family farm corporation. "Family farm corporation" for the purpose of this subdivision means a corporation founded for the purpose of farming and owning agricultural land, in which all of the stockholders are members of a family related to each other within the third degree of kindred according to the rules of civil law.[1]

(Emphasis added.) There is no doubt that Parcel 6000 exceeds 10 acres in size and is actively and exclusively devoted to agricultural use as defined in § 273.111, subd. 6.[2] It is also undisputed that relator is not a "family farm corporation" as required by § 273.111, subd. 3(3), and thus the property in question cannot qualify for green acres status under that provision.[3] Relator argues, however, that Parcel 6000 is entitled to green acres valuation pursuant to subparts (1) and/or (2) of § 273.111, subd. 3.

Under subpart (2) green acres treatment is afforded to property which meets the "agricultural use" prerequisite and which "has been in possession of the applicant, his spouse, parent, or sibling, or any combination thereof, for a period of at least seven years prior to application for benefits under the provisions of [the green acres statute] * * *." As the Tax Court found, Parcel 6000 has clearly been in the possession of relator for a period in excess of seven years. The Tax Court held, though, that subpart (2) is unavailable to relator because a corporation is not an "applicant" within the meaning of this provision.

Support for this conclusion is found in the language of subpart (2), which refers to "the applicant, his spouse, parent, or sibling, or any combination thereof * * *." Due to the use of the terms "spouse, parent, or sibling" in relation to the word "applicant," it could be inferred that the legislature intended for subpart (2) to apply only to individuals and not corporations.

The green acres statute states, however, in subdivision 12, that "[t]his section [273.111] shall be broadly construed to achieve its purpose." As discussed above, the purpose of the statute is to provide a form of tax relief for agricultural property located in urban areas. See, Elwell, supra. The requirements of subdivision 3, as set out in the three subparts, are presumably intended to ensure that farm property purchased for speculative purposes is not given the benefits of the green acres legislation. For example, the seven-year possession condition of subpart (2) requires a real and substantial commitment from the property owner, which strongly indicates that the land is not being held primarily for speculative purposes. When subpart (2) is viewed in this light, we believe it is immaterial whether the owner of the subject land is a corporation or an individual. Irrespective of the type of owner of the property in question, the legislative purpose behind the green acres statute is furthered if the land is used for agricultural purposes and the seven-year possession requirement of subpart (2) is satisfied. Accordingly, we hold that the term "applicant" in subpart (2) be construed as including a corporate property owner, such as appellant, and thus green acres status should be accorded to the sub-

---

**1.** It should be noted that subparts (1) and (2) of § 273.111, subd. 3, as now worded, were enacted at the 1969 legislative session. 1969 Minn. Laws, ch. 1039, § 2. Subpart (3), relating to family farm corporations, was added in 1973. 1973 Minn.Laws, ch. 450, § 1.

**2.** Subdivision 6 provides, in relevant part, that:

Real property shall be considered to be in agricultural use provided that annually: (1) at least 33⅓ percent of the total family income of the owner is derived therefrom, or the total production income including rental from the property is $300 plus $10 per tillable acre; and (2) it is devoted to the production

for sale of * * * horticultural and nursery stock * * *.

Unrefuted testimony of Hans Reiss established that Parcel 6000 is used for agricultural purposes within the meaning of subdivision 6.

**3.** To qualify as a "family farm corporation" under subpart (3), all shareholders must be "members of a family related to each other within the third degree of kindred according to the rules of civil law." Relator concedes that since two of the stockholders are cousins, and thus related in the fourth degree of kindred, the subject property is not owned by a "family farm corporation" within the meaning of subpart (3).

ject property.[4]  Indeed, there is little doubt that this is the very unspeculative type of ownership that the legislature intended to be a part of the "green acres" movement.

Reversed.

SHERAN, C. J., took no part in the consideration or decision of this case.

---

4.  In view of our holding, it is unnecessary to discuss relator's contention regarding the applicability of § 273.111, subd. 3(1).