# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-1257

State of Minnesota,
Appellant,

vs.

Kyaw Be Bee,
Respondent.

**Filed April 15, 2024**
**Reversed and remanded**
**Johnson, Judge**

Ramsey County District Court
File No. 62-CR-22-5290

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Lyndsey M. Olson, St. Paul City Attorney, Caroline Radmacher, Assistant City Attorney, St. Paul, Minnesota (for appellant)

Drake D. Metzger, Metzger Law Firm, L.L.C., Minneapolis, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Segal, Chief Judge; and Cochran, Judge.

## SYLLABUS

The interior of a motor vehicle that is on a public road is a "public place" for purposes of Minnesota Statutes section 624.7181 (2020), which makes it unlawful for a person to carry a BB gun, rifle, or shotgun in a public place.

**OPINION**

**JOHNSON**, Judge

Kyaw Be Bee is charged with carrying a BB gun in a public place in violation of Minnesota Statutes section 624.7181, subdivision 2. The state alleges that Bee drove a motor vehicle while a BB gun was under the driver's seat. The district court dismissed the complaint for lack of probable cause on the ground that the interior of a motor vehicle is not a public place. We conclude that the interior of a motor vehicle that is on a public road is in a public place. Therefore, we reverse the district court's dismissal of the complaint and remand for further proceedings.

**FACTS**

In September 2022, the state charged Bee with the gross-misdemeanor offense of carrying a BB gun, rifle, or shotgun in a public place, in violation of Minnesota Statutes section 624.7181, subdivision 2 (2020). The complaint alleges as follows:

> On May 16, 2022, at approximately 2:05 a.m., a deputy with the Ramsey County Sheriff's Department was near 319 Larpenteur in the City of Saint Paul, Ramsey County. The deputy observed two people standing near a vehicle in the parking lot with tools and a jack. When the people saw the deputy, they walked away from that vehicle and got into another vehicle and drove out of the parking lot. The deputy believed the people were involved in stealing the vehicle's catalytic converter. The deputy stopped the vehicle. The driver was identified as KYAW BE BEE (DOB . . .), Defendant herein. Defendant had a revoked license. Stuffed under the driver's seat was a BB gun. Defendant did not have a permit to carry a firearm in public.

The case was set for trial in August 2023. At a pre-trial hearing, the district court questioned the existence of probable cause to believe that Bee carried the BB gun in a

2

"public place." Counsel for both parties presented oral arguments to the district court on that issue. Neither party presented any evidence. The district court stated on the record that the complaint does not establish probable cause that Bee carried the BB gun in a public place. Three days later, the district court filed an order and memorandum discussing the statutory definition of "public place," reasoning that a privately owned motor vehicle is private property, concluding that the BB gun was not in a public place because it was inside a privately owned motor vehicle, and dismissing the complaint. The state appeals.

## ISSUE

Is there probable cause to believe that Bee carried a BB gun in a "public place," as that term is defined in Minnesota Statutes section 624.7181, subdivision 1(c), given the allegation that he drove a motor vehicle with a BB gun under the driver's seat?

## ANALYSIS

The state argues that the district court erred by dismissing the complaint for lack of probable cause. Specifically, the state argues that the district court erred by reasoning that probable cause is lacking on the ground that the interior of a privately owned motor vehicle is not a "public place." The state argues that Bee carried a BB gun in a public place because the BB gun was in a motor vehicle that was on a public road.

## A.

As a threshold matter, we note that the state may obtain appellate review of a pre-trial order only if the order, if not reversed, would have a "critical impact on the outcome of the trial." *State v. Lugo*, 887 N.W.2d 476, 481 (Minn. 2016) (quotation omitted); *see also* Minn. R. Crim. P. 28.04, subds. 1(1), 2(2)(b). A challenged ruling has a critical impact

3

if it "'completely destroys' the state's case" or "'significantly reduces the likelihood of a successful prosecution.'" *State v. McLeod*, 705 N.W.2d 776, 784 (Minn. 2005) (quoting *State v. Joon Kyu Kim*, 398 N.W.2d 544, 551 (Minn. 1987)). In this case, the state contends that the critical-impact requirement is satisfied because the district court dismissed the sole charge against Bee. Bee agrees that the state has satisfied the critical-impact requirement. We agree with the parties that the district court's order, if not reversed, would have a critical impact on the prosecution.

**B.**

The statute setting forth the charged offense states, "Whoever carries a BB gun, rifle, or shotgun on or about the person in a public place is guilty of a gross misdemeanor." Minn. Stat. § 624.7181, subd. 2.

This general prohibition is limited by a statutory definition of the word "carry," which excludes certain acts that ordinarily would be considered carrying. For example, a person does not "carry" a BB gun, rifle, or shotgun in violation of the statute if the person "has a permit under section 624.714." *Id.*, subd. 1(b)(3). A person also does not "carry" a BB gun, rifle, or shotgun in violation of the statute if the weapon "is unloaded and in a gun case expressly made to contain a firearm, if the case fully encloses the firearm by being zipped, snapped, buckled, tied, or otherwise fastened, and no portion of the firearm is exposed." *Id.*, subd. 1(b)(2). In addition, a person does not "carry" a BB gun, rifle, or shotgun in violation of the statute if the person transports the weapon "to, from, or at a place where firearms are repaired, bought, sold, traded, or displayed, or where hunting, target shooting, or other lawful activity involving firearms occurs, or at funerals, parades,

or other lawful ceremonies." *Id.*, subd. 1(b)(1). And a person does not "carry" a BB gun, rifle, or shotgun in violation of the statute if the person transports the weapon "in compliance with section 97B.045," which allows, among other things, a firearm to be transported in a motor vehicle if the firearm is "unloaded and in the closed trunk of a motor vehicle." *Id.*, subd. 1(b)(5) (referencing Minn. Stat. § 97B.045, subd. 1(2) (2020)).

The statute also defines the term "public place":

> "Public place" means property owned, leased, or controlled by a governmental unit and private property that is regularly and frequently open to or made available for use by the public in sufficient numbers to give clear notice of the property's current dedication to public use but does not include: a person's dwelling house or premises, the place of business owned or managed by the person, or land possessed by the person; a gun show, gun shop, or hunting or target shooting facility; or the woods, fields, or waters of this state where the person is present lawfully for the purpose of hunting or target shooting or other lawful activity involving firearms.

*Id.*, subd. 1(c).

This statutory definition is the crux of this appeal. The state contends that Bee carried a BB gun in a public place because the BB gun was in a vehicle traveling on a road that is "owned, leased, or controlled by a governmental unit." In response, Bee contends that he did not carry a BB gun in a public place because, as the district court reasoned, there is no evidence that a "governmental unit" "owned, leased, or controlled" the vehicle that he was driving and no evidence that the vehicle was "frequently open to or made available to" the public.

Because the question of probable cause in this case depends on the meaning of the statutory definition of "public place," we must interpret that part of the statute. We begin

5

by seeking to determine whether the statutory definition has a plain meaning based on "the common and ordinary meanings" of the words used. *See State v. Thonesavanh*, 904 N.W.2d 432, 436 (Minn. 2017). If a statute has a plain meaning, we deem the statute unambiguous and apply its plain language. *State v. Nelson*, 842 N.W.2d 433, 436 (Minn. 2014). But if a statute is "subject to more than one reasonable interpretation" with respect to the issue on appeal, we deem the statute ambiguous. *Thonesavanh*, 904 N.W.2d at 435 (quotation omitted). If a statute is ambiguous, "we may apply the canons of construction to resolve the ambiguity." *Id.* This court applies a *de novo* standard of review to a district court's interpretation of a statute. *Id*.

## C.

Our analysis is guided, to an extent, by the supreme court's opinion in *State v. Serbus*, 957 N.W.2d 84 (Minn. 2021), which interpreted the term "public place" as used in a similar statute. The defendant in *Serbus* was charged with carrying a pistol in a public place while under the influence of alcohol, in violation of section 624.7142, subdivision 1(4), based on evidence that he drove a motor vehicle with a pistol in the center console. 957 N.W.2d at 86-87; *see also State v. Prigge*, 907 N.W.2d 635, 638-41 (Minn. 2018). The district court dismissed the charge for lack of probable cause, reasoning that "'a private motor vehicle is not a public place' and that there was no indication that Serbus 'frequently makes his vehicle available for use by the public.'" *Id.* at 87. On the state's pre-trial appeal, the supreme court framed the issue as "whether a driver of a motor vehicle is in a public place for the purpose of that statute when the vehicle is on a public highway." *Id.* at 86.

The statute at issue in *Serbus* did not include a statutory definition of "public place." *Id.* at 88. To determine the meaning of those two words, the supreme court referred to lay dictionaries, which "offer a variety of definitions" of both words. *Id.* The supreme court summarized the dictionary definitions by stating that the word "place" "can be used in either a geographical sense, such as one's presence on a highway, or in a spatial sense, such as one's presence inside a car, bus, or other vehicle." *Id.* Consequently, the supreme court determined that "there is more than one reasonable meaning of 'public place'" such that the statute is ambiguous. *Id.*

The supreme court in *Serbus* resolved the ambiguity in the meaning of "public place," as used in section 624.7142, by applying three statutory canons of construction. *Id.* at 89-93 (citing Minn. Stat. § 645.16). First, the supreme court considered the mischief to be remedied—the danger arising from a person carrying a pistol while impaired by alcohol or a controlled substance—and reasoned that the danger "is present even when an impaired person is inside a vehicle" because motor vehicles are "inherently mobile and can be driven to or past places where members of the public are frequently present" and because other persons may be inside other motor vehicles traveling on public roads. *Id.* at 89. Second, the supreme court considered the object to be obtained—"to reduce the risk of injury to people from the discharge of a pistol in places where people generally have a right to be present"—and reasoned that "prohibiting an impaired driver from carrying a pistol on a highway would promote the protective purpose of the statute." *Id.* at 89-90. Third, the supreme court considered "the constitutional, doctrinal, and practical consequences of the parties' positions." *Id.* at 90-92. The supreme court summarized by holding that "these

7

statutory canons support a determination that the Legislature intended to prohibit the driver of a motor vehicle from carrying a pistol on a public highway while impaired." *Id.* at 92. Accordingly, the supreme court concluded that the district court had erred by dismissing the complaint for lack of probable cause. *Id.* at 93.

**D.**

The analysis in this case is somewhat different from the analysis in *Serbus* because the statute in this case includes a statutory definition of the term "public place." *See* Minn. Stat. § 624.7181, subd. 1(c). Nonetheless, we are mindful of the supreme court's observation in *Serbus* that the word "place" may be used in either a "geographical sense" or a "spatial sense." 957 N.W.2d at 88.

The statutory definition of "public place" in section 624.7181, subdivision 1(c), consists of two main clauses. The first clause describes two general types of public places, and the second clause limits the scope of the first clause by providing examples of places that are *not* a public place. The words used in both the first clause and the second clause demonstrate that the term "public place" is used in section 624.7181, subdivision 1(c), in a geographical sense, not a spatial sense.

The first clause provides that the term "public place" means "[1] property owned, leased, or controlled by a governmental unit and [2] private property that is regularly and frequently open to or made available for use by the public in sufficient numbers to give clear notice of the property's current dedication to public use." Minn. Stat. § 624.7181, subd. 1(c) (alterations added). This clause includes "private property" with a "dedication to public use." *Id.* The phrase "dedicated to public use" is a legal term of art used only in

8

connection with real property (not personal property). *See, e.g.*, *In re Moratzka*, 988 N.W.2d 42, 46-51 (Minn. 2023); *Wojahn v. Johnson*, 297 N.W.2d 298, 306-07 (Minn. 1980); *In re Stoick Creek, LLC*, 999 N.W.2d 915, 920 n.1 (Minn. App. 2023). Real property, by its nature, is defined by a geographic location.

The second clause provides that the definition of public place "*does not include . . . a person's dwelling house or premises, the place of business owned or managed by the person, or land possessed by the person; a gun show, gun shop, or hunting or target shooting facility; or the woods, fields, or waters of this state where the person is present lawfully for the purpose of hunting or target shooting or other lawful activity involving firearms.*" *See* Minn. Stat. § 624.7181, subd. 1(c) (emphasis added). The examples of places that are *not* public places are examples of real property. The examples typically have either clearly defined geographic locations (such as "dwelling house or premises," "gun shop," and "hunting or target shooting facility") or well-known characteristics (such as "land" and "woods, fields, or waters"). *See* Minn. Stat. § 624.7181, subd. 1(c). Again, real property, by its nature, is defined by a geographic location. The second clause does *not* contain any examples of personal property or any examples of places that are similar to *Serbus*'s examples of places in the spatial sense, such as "inside a car, bus, or other vehicle."

In addition, other provisions of section 624.7181 indicate that the interior of a motor vehicle that is on a public road is within the statutory definition of "public place" in section 624.7181, subdivision 1(c). In interpreting a statute, we may apply the whole-statute canon by referring to other provisions within the same statute. *See, e.g.*, *STRIB IV, LLC v. County of Hennepin*, 886 N.W.2d 821, 825 (Minn. 2016); *State v. Schmid*, 859 N.W.2d 816, 822-

9

24 (Minn. 2015); *Nelson v. Schlener*, 859 N.W.2d 288, 293 (Minn. 2015). The whole-statute canon recognizes that it is appropriate to "construe a statute as a whole and interpret its language to give effect to all of its provisions." *Prigge*, 907 N.W.2d at 638 (quotation omitted). The whole-statute canon may apply even if a statute has not been deemed ambiguous. *State v. Riggs*, 865 N.W.2d 679, 683 (Minn. 2015).

The statutory definition of "carry" in section 624.7181, subdivision 1(b), expressly provides that a BB gun, rifle, or shotgun lawfully may be carried in a motor vehicle in certain circumstances, thereby creating certain exceptions to the statutory prohibition. The existence of the exceptions indicates that, in the absence of an exception, it may be unlawful to carry a BB gun, rifle, or shotgun in a motor vehicle. To be specific, the statutory definition of "carry" excludes (and thereby allows) the transportation of a BB gun, rifle, or shotgun in a motor vehicle, without criminal liability under the statute, if the weapon is "unloaded and in the closed trunk of a motor vehicle." Minn. Stat. § 624.7181, subd. 1(b)(5) (referencing Minn. Stat. § 97B.045). That exception would serve no purpose if the interior of a motor vehicle were, as a matter of law, not a "public place." In addition, the statutory definition of "carry" in subdivision 1(b) allows a person to transport a BB gun, rifle, or shotgun to or from certain places (such as places "where firearms are repaired, bought, sold, traded, or displayed" or "where hunting, target shooting, or other lawful activity involving firearms occurs"). *See id.*, subd. 1(b)(1). The legislature surely understood that some persons—if not most persons—would transport weapons to such places in a motor vehicle. Because the legislature made certain exceptions for the transportation of a BB gun, rifle, or shotgun in a motor vehicle, we presume that the

10

legislature understood that, in the absence of such an exception, a weapon inside a motor vehicle may be in a public place.

Thus, the text of the statutory definition of "public place" in section 624.7181, subdivision 1(c), indicates that the term is used in a geographical sense, not a spatial sense. In addition, the statutory definition of "carry" in section 624.7181, subdivision 1(b), indicates that the interior of a motor vehicle may be in a public place. We therefore conclude that the interior of a privately owned motor vehicle that is on a public road is within the statutory definition of "public place" in section 624.7181, subdivision 1(c). The statutory definition is unambiguous in this respect.

**E.**

Even if we were to determine that the statutory definition of "public place" in section 624.7181, subdivision 1(c), is ambiguous, we would reach the same conclusion concerning its meaning. We would apply the statutory canons that were applied in *Serbus*. 957 N.W.2d at 89-93. Our analysis would differ somewhat because of the different purposes and prohibitions of the two statutes, but those differences would not substantially affect the application of the canons.

First, the mischief to be remedied is, like the mischief in *Serbus*, "plain from the face of the statute." *See id.* at 89. Section 624.7181 prohibits the carrying of a BB gun, rifle, or shotgun in a public place. The danger arising from such conduct is not significantly lessened if the weapon is inside a motor vehicle because motor vehicles are "inherently mobile and can be driven to or past places where members of the public are frequently present" and because other people may be nearby inside other motor vehicles. *See id.*

11

Second, the object to be obtained is nearly identical to the object in *Serbus*—"to reduce the risk of injury to people from the discharge of a pistol in places where people generally have a right to be present." *See id.* at 89-90. Just as "prohibiting an impaired driver from carrying a pistol on a highway would promote the protective purpose of the statute," prohibiting the carrying of a BB gun, rifle, or shotgun in a motor vehicle that is on a public road also would serve the purpose of this statute. *See id.* at 90.

Third, "the constitutional, doctrinal, and practical consequences of the parties' positions" are similar to the consequences identified in *Serbus*. *See id.* at 90-92. Interpreting the statutory definition of "public place" to include the interior of a motor vehicle would "not open the door to warrantless vehicle searches." *See id.* at 91. Such an interpretation would avoid problems in applying the statutory definition to "other modes of transportation" such as convertibles, motorcycles, electric bicycles, and scooters. *See id.* And such an interpretation would impose minimal burdens on lawful permit holders while protecting public safety. *See id.* at 91-92.

These three statutory canons support the conclusion that the statutory definition of "public place" reflects a legislative intent to prohibit a person from carrying a BB gun, rifle, or shotgun in a motor vehicle that is on a public road. *See id.* at 92.

Bee contends that this court should rule in his favor by applying the rule of lenity. The rule of lenity "applies to the interpretation of criminal statutes when 'a grievous ambiguity or uncertainty in the statute' remains after we have considered other canons of statutory construction." *Nelson*, 842 N.W.2d at 443. The rule of lenity is a "canon of last resort" that applies "'only when, after consulting traditional canons of statutory

12

construction, we are left with an ambiguous statute.'" *Thonesavanh*, 904 N.W.2d at 440 (quoting *United States v. Hayes*, 555 U.S. 415, 429 (2009)). In *Serbus*, the defendant urged the supreme court to apply the rule of lenity, but the supreme court did not do so because the ambiguity in the statute could be resolved by other canons of construction, which meant that the rule of lenity was inapplicable. 957 N.W.2d at 92. In this case too, we could resolve any ambiguity by applying other canons. Because the statutory definition of "public place" in section 624.7181, subdivision 1(c), is not "grievously ambiguous," the rule of lenity does not apply. *Id.*

Thus, if the statutory definition of "public place" in section 624.7181, subdivision 1(c), were ambiguous, we would resolve the ambiguity by applying the three statutory canons identified above and by concluding that the interior of a motor vehicle that is on a public road is in a public place.

**F.**

Probable cause exists if "facts have been submitted to the district court showing a reasonable probability that the person committed the crime." *State v. Lopez*, 778 N.W.2d 700, 703 (Minn. 2010). Probable cause may be established by the allegations in the complaint. *Prigge*, 907 N.W.2d at 641. In this case, the parties apparently agree that Bee drove the motor vehicle on a public road before he was stopped by the deputy. At the pretrial hearing, Bee's attorney framed the issue as "whether that gun being in Mr. Bee's motor vehicle on a public roadway is sufficient to find that there is probable cause." The district court's order is consistent with Bee's argument to the district court. Accordingly, we assume that Bee drove the motor vehicle on a public road. Given that assumption and our

13

interpretation of the statutory definition of "public place" in section 624.7181, subdivision 1(c), the complaint establishes probable cause to believe that Bee carried a BB gun in a public place.

## DECISION

The district court erred by dismissing the complaint for lack of probable cause.

**Reversed and remanded.**